UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-20529-CR-MOORE/LOUIS**

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18.U.S.C. § 982

FILED BY ___DGJ___ D.C.

Nov 3, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIA

UNITED STATES OF AMERICA

vs.

DANIEL HERNANDEZ,

    Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Small Business Administration

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

## *The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

5. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### *The Economic Injury Disaster Loan Program*

7. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

8. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including: information about the gross revenues for the business prior to January 31, 2020; and the cost of goods sold. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentations to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

9. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

### The Defendant and Related Individuals

10. Defendant **DANIEL HERNANDEZ** was a resident of Miami-Dade County, Florida, and an employee of Bank 1.

11. Prior to working at Bank 1, **DANIEL HERNANDEZ** worked at Bank 2.

12. Armando Ariel De Leon was a resident of Miami-Dade County, Florida, and a co-conspirator of the defendant. Until approximately January 2021, Armando Ariel De Leon was an employee of Bank 1.

13. Erich Javier Alfonso Barata was a resident of Miami-Dade County, Florida, and a co-conspirator of the defendant. Erich Javier Alfonso Barata was a customer of Bank 1 and the President of Black Hookah Inc., a Miami, Florida-based entity.

### Relevant Banks

14. Bank 1 was a national bank based in New Jersey.

15. Bank 2 was a national bank based in North Carolina.

16. Both Bank 1 and Bank 2 were approved SBA lenders of PPP loans and insured by the Federal Deposit Insurance Corporation ("FDIC").

### COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 2020, continuing through at least in or around July 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**DANIEL HERNANDEZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Armando Ariel De Leon, Erich Javier Alfonso Barata, and others to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for loans and grants made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic, namely, PPP and EIDL loans; (b) offering, paying, and receiving kickbacks in return for referring other individuals for the submission of false and fraudulent loan applications; and (c) diverting fraud proceeds for the defendant's and co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.  In or around April 2020, **DANIEL HERNANDEZ** agreed with Erich Javier Alfonso Barata to prepare and submit false and fraudulent PPP loan applications.

5.  Between in or around April 2020, and in or around July 2021, **DANIEL HERNANDEZ** directed his co-conspirators to submit the PPP loan applications through interstate wire communications at Bank 1 or Bank 2.

6.  Between in or around April 2020, and in or around July 2021, **DANIEL HERNANDEZ**, Erich Javier Alfonso Barata, and other co-conspirators submitted and caused the submission of false and fraudulent PPP applications at Bank 1 and Bank 2, including a false and fraudulent PPP loan application on behalf of Black Hookah Inc. at Bank 1. The applications, among other things, falsely and fraudulently represented each company's number of employees and amount of monthly payroll.

7.  Between in or around April 2020, and in or around July 2021, **DANIEL HERNANDEZ** and his co-conspirators submitted and caused the submission of false and fraudulent information and documentation in support of the PPP loan applications, including falsified Internal Revenue Service ("IRS") forms and falsified bank statements.

8.  In or around January 2021, Armando Ariel De Leon joined the conspiracy. In furtherance of the conspiracy, Armando Ariel De Leon submitted and caused the submission of false and fraudulent EIDL applications on behalf of Florida-based entities that co-conspirators controlled. Armando Ariel De Leon agreed with **DANIEL HERNANDEZ** to share in a percentage of any resulting loans proceeds.

9.  As a result of the false and fraudulent PPP loan applications submitted as part of this scheme, Bank 1 and Bank 2 approved PPP loans to entities belonging to the defendant's

conspirators and disbursed, via interstate wire transmission, over $15,000,000 in loan proceeds into bank accounts controlled by the defendant's co-conspirators.

10. As a result of the false and fraudulent EIDL loan applications submitted as part of this scheme, the SBA approved EIDL loans to entities belonging to the defendant's co-conspirators and disbursed EIDL loan proceeds to bank accounts controlled by the defendant's co-conspirators, via interstate wire transmission.

11. Co-conspirators paid **DANIEL HERNANDEZ**, Armando Ariel De Leon, Erich Javier Alfonso Barata, and others a kickback based on each false and fraudulent loan funded.

12. The defendant and his co-conspirators used the proceeds from the fraudulent scheme to enrich themselves and others, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

1. The allegations contained in this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **DANIEL HERNANDEZ**, has an interest.

2. Upon conviction of a violation of a criminal conspiracy to violate Title 18, United Sates Code, Sections 1349 and 1343, as alleged in this Information, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
ELI S. RUBIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

DANIEL HERNANDEZ,

_____/
Defendant.

**Court Division** (select one)
- ☑ Miami
- ☐ Key West
- ☐ FTP
- ☐ FTL
- ☐ WPB

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take  0  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☑ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Magistrate Case No. 22-3333-MJ-EGT

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Martinez   Case No. 22-20420-CR-JEM; 22-20194-CR-JEM

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
Eli S. Rubin
Assistant United States Attorney
Court ID No.  A5502535

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: DANIEL HERNANDEZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 1343, 1349

* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.