UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20529-CR-MOORE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL HERNANDEZ,

    Defendant.

_____/

**DEFENDANT'S OBJECTIONS TO**
**THE PRESENTENCE INVESTIGATION REPORT**

Defendant, DANIEL HERNANDEZ, files his objections to the presentence investigation report ("PSI").

Mr. Hernandez, after self-surrendering, entered into a plea agreement, and pled guilty to an information charging him with conspiracy to commit wire fraud. The instant objections do not seek to alter PSI's calculation of the guidelines, which are consistent with the Plea Agreement. Nevertheless, some of the instant objections are made to erroneous statements about Mr. Hernandezs' criminal conduct and seek to clarify some of the facts. While it is no doubt true that this is a serious case and Mr. Hernandez acted wrongfully, something he has for some time accepted, it is only fair that the Court should not consider erroneous or exaggerated misconduct.

The undesigned conferred with counsel for the government before the defendant filed these objections. We have noted those instances parties agree.

1

**Objections to Paragraphs 29, 39, 71, and 127.**

These four paragraphs make similar erroneous statements about Mr. Hernandez's criminal activity, namely that he required or advised the borrowers, who submitted false loan applications, to be sure to immediately move or transfer the loan funds out of their TD Bank accounts to avoid detection or launder the loan proceeds.

Paragraph 29 states: "Hernandez also advised applicants on how to launder the loan proceeds to shield the fraud from detection." Mr. Hernandez objects to this sentence.

Paragraph 39 states: "According to Alfonso Barata, Hernandez had a very specific and clear requirement for applicants they worked with, after receiving the loans proceeds, the applicants had to transfer the loan proceeds out of TD Bank so that TD Bank could not trace how the loan funds were used." Mr. Hernandez objects to this sentence.

Paragraph 71 states: "Further, nearly all the applicants, pursuant to Hernandez's requirement, quickly transferred the majority of the loan proceeds out of TD Bank." Mr. Hernandez objects to the statement that it was his "requirement" that the subject borrowers or applicants transfer the funds.

Paragraph 127 states: "Hernandez also advised, led, and guided applicants on how to launder the loan proceeds to shield the fraud from detection." Mr. Hernandez objects to this statement.

While it may be the case that many of the applicants transferred their fraudulently obtained loan proceeds out of their TD Bank accounts shortly after they

received the loan funds, it was not because Mr. Hernandez "required," "advised," "led," or "guided" them in doing so.

First, many of the borrowers had their bank accounts, including the accounts that they used to make it appear like they were paying payroll, at other banks. Indeed, it is the government's theory of the case that many of the applicants opened accounts at TD Bank for the purpose of obtaining fraudulent loans. The applicants or borrowers transferred the funds to accounts at other banks for reasons that had nothing to with anything Mr. Hernandez said or counseled. The borrowers, who were committing fraud, knew well to transfer the funds from the TD Bank, the bank which they used to defraud the government's PPP Loan program. Indeed, the PSI generally minimizes and diminishes the role and agency of the applicants or borrowers, who ultimately submitted the false loan applicants and kept the lion's share of the fraudulently obtained proceeds from their loans. They did not need any help in trying to avoid detection of their fraudulent loans from which they benefited more than anyone else. And Mr. Hernandez did not, as repeatedly asserted in the PSI, which relies on Afonso's purported statements, require, or direct, the borrowers to transfer the funds out of their TD Bank accounts to avoid detection.

Second, Mr. Hernandez had no contact with most of the borrowers and did not lead, advise, require, or guide them in doing anything, much less in laundering their loan proceeds. While Mr. Hernandez undoubtedly abused his position of trust at the bank and was involved in the fraudulent scheme, it was his co-conspirators, Alfonso, De Leon, a conspirator who is unnamed in the PSI, and others like William Posada

3

(see ¶ 130, PSI), who worked for the unnamed conspirator, who recruited, led, and directed applicants in submitting the false loan applications and documents *and* communicated with the applicants or borrowers about their false PPP loans. Mr. Hernandez kept track of the loans and when they may be approved, and communicated with Alfonso, De Leon, and the unnamed conspirators such information so that they could then collect from the borrowers their commissions. Mr. Hernandez's role and or assistance to the conspirators made it impossible for a borrower to avoid paying a "commission" by claiming that the loan application was rejected or unfunded. Mr. Hernandez referred some applicants or bank customers to his coconspirators as well. But he played no role in telling the applicants or borrowers that they must move or transfer the loan proceeds from TD Bank to avoid detection.

In sum, Mr. Hernandez objects to the above-mentioned sentences in paragraphs 29, 39, 71, and 127. The parties agree to the objection to paragraphs 29, 39, 71, and 127.

**Objection to Paragraphs 31**.

This paragraph states: "Hernandez's conspiracy attempted to defraud the PPP loan program out of more than $30,000,000, and the EIDL Loan program out of more than $7,000,000." The plea agreement shows that Mr. Hernandez conspired to submit between $9,500,000 and $25,000,000, not $30,000,000. *See* Plea Agreement, ECF 28, ¶ 7(b). The parties agree to this objection and that paragraph 31 should be consistent with the loss amount set forth in the plea agreement.

Further, Mr. Hernandez was not involved with, and did not conspire to, submit more than $7,000,000 in EIDL loans. The parties agree to this objection.

**Objection to Paragraph 32.**

Mr. Hernandez objects to the statement in this paragraph that the borrowers who Alfonso recruited applied for PPP loans *through* Hernandez. While it is correct that Mr. Hernandez actively conspired with Alfonso to unlawfully profit from the false loans, he objects to the extent that the PSI leaves the impression that the loan applications were sent or submitted to him and that he underwrote and approved the loans. Alfonso recruited borrowers and coached them on what to do to create the false PPP loan applications. And he assisted them in submitting the loans *directly* to the bank, not *through* Hernandez. Hernandez assisted Alfonso and tracked when the loans were approved but he did not underwrite or approve them as suggested when asserting that they were submitted "through" him.

**Objection to paragraphs 34.**

Mr. Hernandez objects to the sentence in paragraph 34 which asserts that he "worked on" over 50 EIDL loan applications listed on De Leon's spreadsheet. Mr. Hernandez did not "work on" or conspire to submit over 50 EIDL loans. Mr. Hernandez was only involved with 10 EIDL loans, 7 of which were declined. Unknown to Mr. Hernandez, De Leon, on his own and without any involvement of Mr. Hernandez, apparently assisted applicants in submitting over 50 false EIDL loan applications. The parties agree on this objection.

**Objection to paragraph 37.**

Mr. Hernandez objects to the sentence in this paragraph that asserts that he "would work to have applications reviewed and approved by specific bank employees." This assertion misunderstands the facts, and the limits of Mr. Hernandez's authority at the TD Bank. It makes it appear like he assigned certain employees to review or underwrite the loans. Mr. Hernandez could not, and did not, assign any specific TD Bank employees to review, approve, or underwrite the subject PPP loans. Rather, once a loan was submitted to the bank it went into a que and the bank assigned the underwriting of the loans to TD Bank employees charged with underwriting responsibility. Those underwriting employees did not have the authority to assign themselves any loan files. Once a loan was assigned to a particular employee to be underwritten, Mr. Hernandez sometimes tracked when the loans were approved and sometimes communicated with the employees to ask that loans be reviewed. But he could not, and did not, assign specific employees to review and approve (underwrite) the loan applications. Hence, he objects. Although Mr. Hermandez is a guilty conspirator, the inference or suggestion that he could underwrite and approve a loan, or have a loan approved by an employee he controlled or assigned an application for review is incorrect.

**Objection to Paragraph 38.**

Mr. Hernandez objects to the assertions that Hernandez advised Alfonso Barata how much to request in a loan proceeds independent for the company's finances and that he wanted to know when a loan was submitted so that he could

6

direct is review to someone Hernandez trusted. These assertions are incorrect. Mr. Hernandez did not advise Alfonso Barata as the amounts to be requested in the loans. Alfonso and the borrowers he recruited made up the false payroll amounts they used to seek the loans. And, as stated above, Mr. Hernandez did not have the authority or ability at assign anyone to underwrite a loan.

Paragraph 38 also misleadingly states that, according to Alfonso Barata, Hernandez initially charged 12%, but increased the charge to $15%. While that is what Alfonso Barata may have stated, it out leaves the fact that the amounts charged are those that Alfonso Barata *and* Hernandez split. The parties agree that 12-15% was what Alfonso Barata and Mr. Hernandez split.

**Objection to paragraph 40.**

In this paragraph, the PSI states that Alfonso Barata submitted 21 applications "at Hernandez" direction." As "an example," paragraph 40 PSI cites paragraphs 41-52, which described the loans Alfonso Barata obtained for two entities he controlled, Black Hookah and EJ Networking and Security Service. Nothing in those paragraphs, however, shows how he submitted the loans at Mr. Hernandez's "direction." Rather, they show how Alfonso shared the information about his two loans with Hernandez and how they worked as conspirators with Hernandez tracking the loan's review and approval to assist Alfonso Barata. But it is Alfonso Barat who submitted the false loan applications, false payroll records, *and* kept and controlled most of the loan proceeds. Indeed, according to paragraph 58, Alfonso Barata, used some of the loans' proceeds to buy a yacht, a Sea Ray 44. Again, while paragraphs 41-

52 show how Mr. Hernandez used his position at TD Bank to conspire with Alfonso Barata to profit from the false loan applications (something that was undoubtedly wrongful), they do not show that Alfonso Barata acted at "Mr. Hernandezs direction" in submitting the loans. This paragraph exaggerates Mr. Hernandez's influence over Alfonso Barata and diminishes Alfonso Barata's role and agency over his participation in the scheme, which included his profiting from loans sought on behalf of companies that *he* controlled.

**Clarification to Paragraphs 59 and 68.**

These paragraphs (and some of those that follow) describe Alfonso Barata submitting a false PPP loan application on July 12, 2021, and receiving loan proceeds on July 21, 2021. Mr. Hernandez seeks to clarify that he was not in involved with any PPP loan Alfonso Barata may have submitted in 2021. Although these paragraphs do not explicitly state that Mr. Hernandez conspired with Alfonso Barata to submit the February 2021 loan, it leaves such impression. The parties agree on this clarification.

**Clarification to paragraph 76.**

This paragraph states that Alfonso Barat went "numerous" times to Mr. Hernandez home drop off his share of the commission. Hernandez seeks to clarify how many times Alfonso Barata went to his house to share commissions. They met at Mr. Hernandez' home 4 times, on 04/22/20, 04/23/20, 05/02/20, and 06/13/20.

Mr. Hernandez objects to the statement in paragraph 76 that he shared a portion of the commission with another TD Bank employee during a visit from Afonso Barata to drop off his share of the commission.

**Objection to paragraph 77**.

This paragraph asserts that, according to Alfonso Barata, "Hernandez wanted to charge applicants an additional fee to have their loans forgiven and reportedly responded by saying something to the extent that the applicants were already receiving more that they were entitled to." Mr. Hernandez objects to this statement. It was Alfonso Barata who thought of the idea of charging the applicants, most of whom he knew and recruited, an additional fee to obtain loan forgiveness because the thought it was unfair that they kept most of the loan proceeds from the fraudulent loans that he and Hernandez had helped them obtain.

**Clarification to paragraph 78.**

This paragraph asserts that following a disagreement between Hernandez and Afonso Barata that Hernandez returned at least a portion of the loan proceeds. It was *all* the loan commissions, which Afonso Barat had shared with Hernandez, except for those relating to two loans. Hernandez returned approximately *$300,000* to Alfonso Barata. So, it is true that "at least a portion" was returned but candor requires that we disclose how much.

**Objection to paragraph 111.**

This paragraph describes a spreadsheet that De Leon created and kept and that it recorded over 50 EIDL loans. While it is true that it refers to EIDL loans, Mr.

9

Hernandez objects to the extent that the PSI asserts that Mr. Hernandez conspired with De Leon to submit over 50 EIDL loans. *See* objections to paragraphs 31 and 34 above. The parties agree on this objection.

### Clarifications to paragraphs 126 and 180.

Mr. Hernandez self-surrendered on August 9, 2022. The exact amount which Mr. Hernandez surrendered to the FBI is $606,060. The parties agree on this clarification.

### Objection to paragraph 178.

This paragraph fails to note Mr. Hernandez's and his wife's mortgage of $542,362 as a liability. This appears to be inadvertent as it is described in paragraph 181. The parties agree on this objection.

Wherefore, the Defendant, Daniel Hernandez, respectfully requests that the Court sustain his objections to the PSI.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on February 23, 2023, a true and correct copy of the foregoing has been furnished electronically via CMCEF to all counsel of record.

Respectfully submitted,

**BELL ROSQUETE REYES ESTEBAN, PLLC**
999 Ponce De Leon Blvd.
Suite 810
Coral Gables, Florida 33134
Telephone: (305) 570-1610
Facsimile: (305) 570-1599

      Email:  hbell@bresq.com
      ***Counsel for Daniel Hernandez***

By: ____s/Henry P. Bell_____
    Henry P. Bell
    Florida Bar No. 090689