IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-20529-CR-MOORE

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL HERNANDEZ,

    Defendant.

_____/

## **DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, DANIEL HERNANDEZ, files his Sentencing Memorandum, requesting that the Court vary below the applicable sentencing guidelines in sentencing him and impose a sentence of 78 months of imprisonment. In support, he states:

> *Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results.*[1]

---

1. *United States v. Gupta, 904* F. Supp.2d 349, 350 (S.D.N.Y. 2012) *aff'd*, 747 F.3d 111 (2nd. Cir. 2014).

1

While Mr. Hernandez's criminal conduct was wrongful and he appreciates that the Court will sentence him to a term of imprisonment, a review of the applicable sentencing factors under 18 U.S.C. § 3553(e) weigh in favor a below guideline sentence. The applicable guidelines provide for a range of imprisonment of 97-121 months. PSI, ¶ 191. We respectfully request that the Court impose a sentence of 78 months.

Mr. Hernandez has no prior criminal history. He presents little or no risk of reoffending. An effective deterrent message can easily be sent with a sentence of 78 months rather than 97-121 months of imprisonment. Mr. Hernandez confessed early and agreed to proceed by information and cooperate with the prosecution. And he disgorged the lucre he kept when he turned over $606,060 to the government.

A lengthy discussion of the applicable case law holding that the guidelines are advisory is unnecessary. The Court is well versed in the law, and it is well established that the Court should tailor the sentence to be imposed in line with the factors or considerations set forth in 18 U.S.C. § 3553(a). Indeed, the Supreme Court held that the guidelines are *not* to be presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original); *Rita v. United States,* 551 U.S. 338, 351 (2007). *See also, Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (The Court must conduct an individual assessment of the defendant based on the §3553(a) factors and may "reject (after due consideration) the advice of the Guidelines."); *United States v. Hunt*, 459 F.3d at 1180 1184 (11th Cir. 2016) ("If *Booker* is to mean anything, it must be that district courts are obligated to impose a reasonable

sentence, regardless of the guideline range, so long as the Guidelines have been considered.").

Below we discuss several of the section 3553(e) factors as they apply to Mr. Hernandez.

**A.      The Nature and Circumstances of the Offense.**

To start, we appreciate the subject PPP loan fraud scheme to which Mr. Hernandez pled guilty is a serious offense and we do not pretend otherwise. We further appreciate the fact that Mr. Hernandez used his position with his employer, TD Bank, to profit from the scheme. Nevertheless, it is worth noting that Mr. Hernandez disgorged the lucre he held from the scheme. More specifically, throughout the scheme, Mr. Hernandez and those coconspirators described in the PSI (Alfonso, De Leon, and the unindicted coconspirator) received from the borrowers (also conspirators) payments or commissions for helping them with their fraudulent loans, which they then split. Those "commissions" were paid to Mr. Hernandez in cash. On December 22, 2022, at the undersigned's office, Mr. Hernandez voluntarily met with FBI agents in this case and handed them the cash he continued to hold - $606,060.

While fraud prosecutions are common, it is rare for a defendant to admit he is sitting on a significant sum of cash from the fraud that he then on his own turns over to the government. In doing exactly that here, Mr. Hernandez did everything within his grasp to mitigate the impact of his unlawful profiteering from the scheme and

disgorge the lucre he held. Hence, while this matter involves a serious fraud offense, Mr. Hernandez's disgorgement of the $606,060 weighs in favor of leniency.

B.     **History and Circumstances of the Defendant.**

Consideration of the sentencing factors under § 3553(e) begins with the recognition that a defendant's history and characteristics may support a downward variance and should be afforded the same weight as the other factors. *United States v. Rodriguez*, 724 F. Supp. 1118, 1119 (S.D.N.Y. 1989). *See also United States v. Prosperi*, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to home detention because the loss numbers did not take into account the personal characteristics of the defendant); *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on "the support that the defendant stood to receive from his family [and] personal qualities indicating his potential for rehabilitation"). As one court eloquently stated with respect to this factor:

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

*United States v. Adelson*, 441 F.Supp.2d 506, 513-14 (S.D.N.Y. 2006).

Mr. Hernandez, who has no prior criminal history, is a supportive father,

stepfather, son, sibling, and a valued member of his family. In his household, he is the primary economic support for his wife who discontinued working after a cancer diagnosis and treatment.

While Mr. Hernandez committed a grievous wrong, in sentencing him, the Court should avoid defining him *solely* by his lowest or worst moments. Mr. Hernandez's history and characteristics weigh in his favor of his being be treated with some leniency.

C.   **The Need to Promote Respect for the Law and Deterrence**.

These factors are intertwined and revolve around the message a sentence sends to the defendant and would-be-offenders to dissuade them from committing similar offenses. There are two kinds of deterrence, specific deterrence, and general deterrence.

As for specific deterrence, there is little chance, if any, that Mr. Hernandez, who is in fifties already, will again engage in any sort of criminal conduct. He is integrated into a supportive family, and he has no prior criminal record. And while on bond release he found another job and continued to work, holding down a job working for landscaping business. PSI, ¶ 174.

Mr. Hernandez's background and extremely low likelihood of recidivating may justify a downward variance or departure. In *United States v. Clay*, 483 F.3d 739 (11th Cir. 2007), the Eleventh Circuit affirmed a sentence of 60 months based on the district court's view that the defendant was unlikely to reoffend, even though the defendant's guideline range was 188-235 months. The Eleventh Circuit stressed that a sentencing court is "require[d] . . . to consider characteristics of the defendant and the offense that

5

make it more or less likely that the defendant will reoffend." *Id.* at 745. *See also, United States v. Chase,* 828, 831 (8th Cir. 2009) (finding that lack of criminal history can be considered as a basis for downward variance even though it is considered in calculating the guideline range); *United States v. Darway*, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Urbina*, 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *United States v. Cabrera,* 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"). *United States v. Ruiz*, 2006 WL 1311982, at *4 (S.D.N.Y. May 10, 2006) ("This Court and others have previously declined to impose Guidelines sentences on defendants who, like Ruiz, were over the age of forty at the time of sentencing on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants.").

A strict guideline sentence of 97-121 months of imprisonment is simply unnecessary to deter Mr. Hernandez from future criminal behavior. In fashioning an individualized sentence, the fact that Mr. Hernandez is highly unlikely to recidivate favors leniency.

General deterrence is a more difficult factor to weigh and measure. However, in

assessing how severe a sentence the Court should impose upon Mr. Hernandez to send a deterrent message to other potential offenders, the Court should consider the fact that that it is the certainty of being caught and punished rather than the length of a sentence which best serves to deter potential offenders. Studies have shown that increasing the severity of a person's sentence does little to deter future crime. U.S. Dep't of Justice, Nat'l Inst. *Of Justice, Five Things About Deterrence* (May 2016) (citing Daniel S. Nagin, *Deterrence in the Twenty-First Century, Crime and Justice: A Review of Research*, vol. 43 (2013)). Further, lengthy prison sentences are less likely to reduce the likelihood of recidivism. *See* Valerie Wright, *Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity in Punishment* 7 (2010) (finding that "[a]mong low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences"). Instead, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ("Three National Academy of Science Panels.... reached that conclusion, as have every major survey of the evidence."); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White-Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). *See also Adelson*, 441 F. Supp.2d at 514 (S.D.N.Y. 2006) (J. Rakoff) ("There is considerable evidence that even relatively short sentences can have a strong deterrent effect on

prospective white-collar offenders.").

Here, the government appears to be actively investigating and indicting many PPP loan fraud cases and, as such, disabusing many offenders and would be offenders of the false impression they had that they somehow could easily get away with defrauding the government. The truth is that is not so easy to get away with defrauding the government, as this prosecution and many others have shown. Many offenders are being held to account and, like Mr. Hernandez will be, are serving prison sentences. Indeed, it appears that the number of PPP loan fraud related cases is only increasing. The word is out that the government is coming for those who defrauded the government's PPP loan program.

Further, although sending a deterrent message is important, the Court should avoid over-emphasizing general deterrence. *See United States v. Gardellini,* 545 F.3d 1089, 1095 (D.C. Cir. 2008) (rejecting government's contention that affirming a probationary sentence imposed in criminal tax case would lessen deterrent value of criminal law "because it elevates one § 3553(a) factor - deterrence - above all others. As § 3553(a) makes clear, the district court at sentencing must consider and balance a number of factors- not all of which will point in the same direction."). Here, with the many prison sentences being imposed in similar fraud cases, including the one which Mr. Hernandez will serve, it is unnecessary to impose upon him a sentence of 97 or more months to send an effective and compelling deterrent message. Again, we appreciate that this is a serious matter, but the sentence of 78 months in prison requested through this memorandum does not in any way diminish the offense's

seriousness while also providing a meaningful deterrent message.

### D.   Unwarranted Disparities.

A close reading of the PSI shows that there are unwarranted disparities in how the guidelines are being applied to other important conspirators in this case. *See* PSI, ¶¶ 127-129 (addressing the defendants' roles). The PSI asserts, consistent with the Plea Agreement, that Mr. Hernandez should receive a four-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(a) because he was a leader or organizer of criminal activity involving five more participants or that was otherwise extensive. PSI, ¶127. To be sure, the conspiracy here involved five or more participants because the defendants conspired with the borrowers who were the chief beneficiaries of their fraudulent loans. When there are five or more participants, an aggravating role increase is of either three or four levels. U.S.S.G. §§ 3B1.1(a) and (b). A two-level increase is not an option when five or more participants are involved in the offense. *Compare* U.S.S.G. §§ 3B1.1 (a) and (b) *with* U.S.S.G. § 3B1.1 (c).

Despite the uncontroverted fact that this case involves well over five participants, the PSI (and apparently the plea agreements) provides that De Leon and Alfonso, who are every bit as culpable as Mr. Hernandez, especially when considering that they profited handsomely from their own fraudulent loans and recruited, directed, and influenced many more criminal participants (the borrowers) than Mr. Hernandez, receive only two-level role enhancements. *See* PSI, ¶¶ 138 and 129. According to the PSI, the two-level enhancements applicable to De Leon and Alfonso are provided for pursuant to U.S.S.G. § 3B1.1(c). *Id.* As explained above, however, there is no legal basis

for imposing only a two-level role enhancement on any defendant in this case who played an aggravating role because the offense involved five or more participants participants. U.S.S.G. § 3B1.1(a) and (b).

Further, the crux of an aggravating role enhancement turns on whether the defendant led or directed *other participants. See United States v. Glover*, 179 F.3d 1300 (11th Cir. 1999); *United States v. Harness*, 180 F.3d 1232 (11th Cir. 1999), *United States v. Campa*, 529 F.3d 980, 1013 (11th Cir. 2008), *United States v. Martinez*, 584 F.3d 1022 (11th Cir. 2009), *United States v. Jennings*, 599 F.3d 1241, 1253 (11th Cir. 2010). De Leon, Alfonso, and the unindicted co-conspirator are no less culpable than Mr. Hernandez. While Mr. Hernandez faces an abuse of trust enhancement because he was employed by the bank while involved in the scheme, when it comes to leading or organizing other participants in the fraud,[2] they are equally culpable to Mr. Hernandez and played more important roles as defined by the aggravating role guideline, U.S.S.G. § 3B1.1, because they recruited and influenced scores of borrowers for whom they also provided the false documents they submitted with the false loan applications. In influencing and controlling *other* participants in the fraud scheme, which lies at the heart of the guideline, Alfonso, De Leon, and the unindicted coconspirator are more, not less culpable, than Mr. Hernandez, yet they face lower aggravating role enhancements than the four-level increase Mr. Hernandez faces because of his

---

2. De Leon, who the PSI does not describe as facing an abuse of trust enhancement, was also employed by TD Bank when he submitted fraudulent loans to TD Bank for his benefit on behalf of companies he controlled. *See* U.S. *v. Armando De Leon*, Case No. 22-20420-Martinez, Criminal Complaint, ECF 1(describing De Leon submitting false loan applications to Bank 1 (TD Bank)

aggravating role. Accordingly, Mr. Hernandez's guideline range is overstated in comparison to De Leon and Alfonso's guideline ranges.

In sum, the misapplication of the role guidelines to provide lower enhancements for De Leon and Alfonso and the special treatment of the unindicted coconspirator are unwarranted disparities that the Court should consider. There is no difference in their roles as defined by U.S.S.G. § 3B1.1. Accordingly, the unwarranted disparities here weigh in favor of a downward variance for Mr. Hernandez.

**E.    The Applicable Sentencing Guidelines are Harsher than Necessary.**

The applicable guideline range calls for a term of imprisonment of imprisonment of 97-121 months in prison. The sentencing guidelines, however, are but one of the considerations that the Court must consider in fashioning a fair and reasonable sentence. *See Hunt*, *supra,* at page 2. As recognized by the Eleventh Circuit in *United States v. Glover*, 431 F.3d 744, 752-753 (11th Cir. 2005), in some cases, the guidelines may have little persuasive force when considering some of the other § 3553(a) factors.

In Mr. Hernandez's case, a sentence of 97 months or more would be harsher than necessary to achieve the goals of the sentencing statute. A strong deterrent message can be sent with a sentence lower than 97 months of imprisonment. Mr. Hernandez presents little or no risk of recidivating. His background and characteristics show he has no prior criminal history and that he is a valued and selfless member of his family. He agreed to plead guilty early to an information and is trying to rectify his

where he was employed when submitting the applications.

wrongdoing by cooperating with the government, which shows that he recognizes the wrongfulness of his conduct and further demonstrates that he is most unlikely to ever commit a fraud offense again. Mr. Hernandez voluntarily disgorged the lucre he held. And there exists unwarranted disparities in the calculation of the role guidelines between the defendants which further warrants a downward variance.

Request for voluntarily surrender.

To facilitate Mr. Hernandez's ongoing cooperation, Mr. Hernandez requests that the Court permit Mr. Hernandez to voluntarily surrender to the facility within the BOP where he is designated to serve his sentence.

WHOREFORE, for the above stated reasons, the defendant, Daniel Hernandez, respectfully requests that the Court vary below the applicable guideline range and impose upon him a sentence of 78 months imprisonment.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 28, 2023 a true and correct copy of the foregoing has been furnished electronically via CMCEF to all counsel of record.

Respectfully submitted,

**BELL ROSQUETE REYES ESTEBAN, PLLC.**
999 Ponce De Leon Blvd.
Suite 810
Coral Gables, Florida 33134
Telephone:   (305) 570-1610
Direct Line: (305) 570-1576
Cellular:       (305) 781-8111
Facsimile:    (305) 570-1599
Email:          hbell@brresq.com

By:___s/ Henry P. Bell_____
        HENRY P. BELL
        Fla. Bar No. 0090689

13